**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

MATTHEW ALWARD,

    Petitioner,

    v.

ERIC ROKOSKY, *Warden*

    Respondent.

Civil Action No.:  JRR-24-3091

**<u>MEMORANDUM OPINION</u>**

Matthew Alward, a federal inmate currently confined at Federal Correctional Institution-("FCI") Cumberland, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 (ECF No. 1), which he supplemented (ECF Nos. 4, 5) to seek restoration of good conduct credits revoked as a result of a disciplinary hearing. ECF No. 1 at 3; ECF No. 4 at 7.  Alward also asks to have the disciplinary report expunged, and all privileges and his previous security level restored. *Id*. Subsequently, Alward filed an Emergency Motion for Preliminary Injunction and Temporary Restraining Order (ECF No. 19), to which Respondent replied. ECF No. 27. Alward also filed a Motion for Summary Judgment (ECF No. 22) and for a Hearing (ECF No. 37).

Respondent Warden Rokosky's Court-ordered response seeks dismissal of the petition, or summary judgment, because Alward received all process due in his disciplinary hearing, his claim of retaliation is not cognizable under § 2241, and his request to have his privileges and security level restored are remedies not available under § 2241. ECF No. 24.  Alward was notified of his opportunity to reply (ECF No. 25) and has done so. ECF No. 34. Having reviewed the petition, motions, and related filings, the Court finds that no hearing is necessary.  Rules 1(b), 8, *Rules Governing Section 2254 Cases in the United States District Courts*; D. Md. Local R. 105.6.  For the reasons set forth below, the Court grants Respondent's motion to dismiss, or in the alternative,

for summary judgment, and denies the petition for writ of habeas corpus.[1]  Alward's Motions for

Injunctive Relief, Summary Judgment, and a Hearing are denied. The parties' additional motions

are addressed below.

**BACKGROUND**

Except where noted, the following facts are undisputed or Alward fails to generate a triable

issue for habeas relief.

**A.  Disciplinary Proceedings**

Alward is serving a 120- month term of confinement (ECF No. 24-1 at 3, ¶ 5; ECF No. 24-

1 at 9), with a projected release date of June 3, 2027. ECF No. 24-1, ¶ 6; ECF No. 24-1  at 10. At

the time of the events complained of, he was incarcerated at Federal Correction Complex

Allenwood (FCC-Allenwood) in Allenwood, Pennsylvania. ECF No. 24-1, at 3, ¶ 7; ECF No. 24-

1 at 12.

The parties agree that on May 8, 2024, at 1:12 p.m., while housed at FCC-Allenwood,

Alward approached Counselor Noon, who was inside the counselor's office, regarding how to

access court information.  ECF No. 24-1 at 3, ¶ 8; ECF No. 24-1 at 14.  The parties dispute what

happened thereafter.

According to Respondent, Noon answered Alward's questions and then Alward asked

Noon whether he was "the one that shook down my cell yesterday?" *Id*.  After Noon responded in

the affirmative, Alward took an aggressive step toward Noon, stating, "well, if you know what's

good for you, I'd suggest you don't come in my cell again." *Id*.  Noon directed Alward to step

back and asked Alward if he was attempting to threaten or intimidate him. *Id*.  Alward responded,

---

[1] Respondent's Motion for Leave to Withdraw as Attorney (ECF No. 85) is granted.

"You can take it as you want, you're not safe just because you work in a low." *Id*. Noon ordered Alward to immediately exit his office and Alward complied. *Id*. Noon wrote an incident report that day, which was delivered to Alward later that day. *Id*.

For his part, Alward denies that the foregoing occurred. ECF No. 4 at 6. Rather, he claims that after he asked Noon about accessing court documents, Noon advised that his computer was not working. ECF No. 1 at 1. Alward then left Noon's office without further incident. *Id*. Alward states that he previously filed a sexual assault allegation against Noon and believes the infraction was issued in retaliation for having done so and for having filed other grievances. ECF No. 4 at 7; *see also* ECF No. 24-1 at 15.

On May 13, 2024, a hearing was held before the Unit Discipline Committee (UDC). ECF No. 24-1, at 4, ¶ 9; ECF No. 24-1 at 15. There, Alward claimed that the incident report was in "retaliation for the Administrative Remedy early in the week, and for the past recording of a sexual assault statement against a staff member at pervious [sic] institution." ECF No. 24-1 at 15. The UDC referred the incident report to the Disciplinary Hearing Office for further hearing, recommending that Alward be sanctioned with loss of good conduct credits (GCT), all other available sanctions, and that he be transferred. *Id*. That same day, Alward received and signed a copy of his notice of discipline hearing and rights. ECF No. 24-1 at 4, ¶ 10; ECF No. 24-1 at 19, 21. He requested Dr. Antonucci serve as his staff representative, and requested to call three inmates as witnesses. ECF No. 24-1 at 21.

Dr. Antonucci agreed to be Alward's staff representative at the hearing, which included assisting Alward in presenting the best defense possible. ECF No. 24-1 at 23. The duties of a staff representative include: (1) assisting the inmate in presenting information the inmate wishes to present; (2) speaking with witnesses who might furnish information on the inmate's behalf; (3)

gaining knowledge about reports relative to the charge; (4) presenting evidence favorable to the

inmate's defense; (5) providing information which could assist the Disciplinary Hearing Officer

("DHO") and which could also assist the inmate in receiving a lower sanction; (6) helping the

inmate understand the charges against him and the possible consequences; (7) being familiar with

hearing procedures and explaining them to the inmate; (8) not being present during DHO

deliberations, except when confidential information is involved; and (9) where requested,

providing the inmate assistance in writing an administrative appeal. *Id*.

The disciplinary hearing was held on May 16, 2024.  ECF No. 24-1 at 5, ¶ 11; ECF No.

24-1 at 25.  The DHO confirmed that: Alward received a copy of the written incident report, wished

to call Dr. Antonucci as his staff representative, wished to call inmate witnesses, did not have any

documentary evidence to submit, and understood his rights. ECF No. 24-1 at 25-26.

In reaching a decision, the DHO considered the incident report as well as Noon's

memorandum, which stated that he and Alward were alone in the office, the door was closed, and

no other inmates or staff were in the area.  ECF No. 24-1 at 5, ¶ 11; ECF No. 24-1 at 27, 28, 34.

Additionally, the DHO considered Dr. Antonucci's statement that he "met with [Alward's]

witnesses before the hearing.  Inmates [redacted] both said that they don't know anything about

the incident and the only thing they know about this is that they heard Alward saying that he was

going to be retaliated by staff."  ECF No. 24-1 at 5, ¶ 11; ECF No. 24-1 at 27, 28, 37.  The DHO

also considered Alward's written statement refuting Noon's version of events, where Alward

stated:

> This is not true. I was asking him to check on something for me and he said that he
> has to wait until the computers come back up. I said how's 3:00 p.m. sound, he said
> that's fine and I left the office. This is being done as retaliation because I file BP-
> 8's and also have an open sexual abuse case regarding a staff member.

ECF No. 24-1, at 5, ¶ 11; ECF No. 24-1 at 27.  The DHO additionally considered written statements provided by two inmates Alward sought to call as witnesses: both, however, indicated they did not have any knowledge of an incident between Alward and staff.  ECF No. 24-1 at 27; ECF No. 24-1 at 31-32.  In further explanation of the proceedings, DHO Lupotsky explains that none of the witnesses Alward sought to call testified during the hearing because they were not present during the incident and therefore they were not actual witnesses to the incident.  ECF No. 24-1 at 5, ¶ 12; ECF No. 24-1 at 27-28, 37.

Ultimately in making his decision, the DHO gave greater weight to the reporting officer's written account of the incident, finding Alward's

> words are indeed a threat to inflict some type of harm upon another person. Threats to the safety and well-being of others are not taken lightly and pose a substantial risk. Other than denying you did this, you provided the DHO with no substantive evidence to support that you did not threaten another person with bodily harm.

ECF No. 24-1 at 5, ¶ 12; ECF No. 24-1 at 28.  After considering all of the evidence, the HO held that Alward committed the act as charged and sanctioned him to loss of 27 days of Good Conduct Time, 30 days in the Special Housing Unit, and six months' loss of commissary and phone privileges.  ECF No. 24-1 at 6, ¶ 13; ECF No. 24-1 at 28.  The disciplinary hearing report was completed on May 17, 2024, and a copy was delivered to Alward on May 29, 2024.  ECF No. 24-1 at 6, ¶ 14.  Alward was advised of his right to file an appeal within 20 calendar days.  *Id*.; ECF No. 24-1 at 39.

Alward timely filed administrative remedy number 1201106-A3, after which the DHO was directed to amend the report to include additional information related to the witnesses.  ECF No. 24-1 at 6, ¶ 15; *see also* ECF 4-1, p. 4.  On September 5, 2024, the DHO issued the amended report, which Alward received the next day.  ECF No. 24-1 at 29.  He was again advised of his right to appeal within 20 calendar days.  *Id.*

**B. Request for Injunctive Relief**

In his Motion for Preliminary Injunction (ECF No. 19), Alward states that Correctional Officer Michael Southern informed other inmates that he sought Southern's assistance "because other inmates were picking on him." *Id*. at 1. As a result, other inmates "are now starting to organize and starting to politic. On Nov. 29, 2024, a kyte[2] was received about another inmate was going to be hurt." *Id*. He claims that he has "been approached several times now from inmates regard Southern's actions." *Id*. at 2. Alward claims that Southern's actions place him at a risk of harm and he seeks to be transferred to the Federal Prison Camp ("FPC") at Cumberland. *Id.* at 1. Alward claims further that the risk of harm will not follow him to the prison camp as it "contains likeminded individuals." *Id*.

In support of his Motion, Alward provides a statement from another inmate claiming that Southern advised other inmates that Alward was a "snitch." ECF No. 26. In a later filing, Alward states that, on an unspecified date, he spoke with Southern about his belief that Southern put Alward "on blast and put [him]in danger." ECF No. 39 at 1. According to Alward, Southern advised that he had spoken to the inmates in the business office and "told them to knock it off." *Id*. Alward explains, in contravention to the affidavit of the other inmate he supplied, that Southern "did not come right out and say I snitched but by his actions of bringing it up did 'dry snitch' me out. So yes he is at fault for the actions I wrote about. . . ." *Id*. Alward also offers his opinion that Southern is a "good guy." *Id*.

In additional support of his request for injunctive relief, Alward avers that he was approached in a bathroom and "almost got assaulted over being blamed for something that is a direct action from what Southern did." *Id*. at 2. He provides a statement from another inmate

---

[2] The court understands Alward to refer to the slang term "kite," meaning a written message or note.

who claims he was present when other inmates approached Alward about "his boss telling everyone in UNICOR office that Alward did snitch and Alward needs to watch his back and not sit at our table." ECF No. 42. This inmate further asserts that "some people have assaulted Alward because of this." *Id*. Additionally, Alward submits his own affidavit, claiming that, on December 31, 2024, another inmate threatened to "drag [Alward] into the paint room and beat the brakes off [him]." ECF No. 53. He claims, without support, that the threat was caused by, or a result of, Southern's statements. *Id*. Alward also states that he declines protective custody and reiterates his desire to be transferred from his medium security confinement at FCI-Cumberland to the low security FPC-Cumberland. *Id*.

In response to Alward's Motion, Respondent provides the affidavit of Michael Southern, who explains that he is the Factory Manager in UNICOR at FCI-Cumberland, where Alward is assigned to work. ECF No. 27-1 at 2, ¶ ¶ 1, 3. Southern denies that he ever provided information about Alward to other inmates and also specifically denies informing other inmates that Alward was a snitch. *Id*. ¶ 3. Additionally, Southern states that Alward has never expressed a concern for his safety to him or requested Southern's assistance. *Id.*

### C. Motions for Leave to File

On January 24, 2025, the Court entered an Order, which, among other things, noted that Alward had persisted in filing repetitive and frivolous motions and related papers despite warnings from the Court not to do so, and despite being provided express direction from the Court as to applicable standards for certain motions. ECF No. 67. As such, Alward was directed that before he filed a motion or other paper with the Court, he must seek leave of Court to do so, and that failure to abide by the Court's Order would result in the Court striking the filing without further notice. *Id.*

Undeterred, from February 11 to March 17, 2025, Alward filed Motions for Leave to: File the Proposed Motion to Produce (ECF No. 80); File Memorandum in Support (ECF No. 82); File Memorandum (ECF No. 83); File the Proposed Attachment (ECF No. 84); Address the Court (ECF No. 88); Request Emergency Injunction (ECF No. 89); Reconsider TRO (ECF No. 92); File for Appointment of Counsel (ECF No. 93); Submit Brief Statement (ECF No. 94); and to Seek Leave (ECF No. 95).  Alward's Motions for Leave to File are denied. His proposed Motions are duplicative of Motions he previously filed and which were denied by the Court, or are repetitive to documents previously filed in the Court, and are otherwise without grounds or authority demonstrating he is entitled to the relief sought, or that the Court has authority to grant the relief requested.

## LEGAL STANDARD

"The Federal Rules of Civil Procedure . . . , to the extent that they are not inconsistent with statutory provisions or [the Rules Governing Section 2254 Cases], may be applied" to habeas corpus proceedings.  Rule 12, *Rules Governing § 2254 Cases in the U.S. Dist. Cts.*; *see also* Rule 12, *Rules on Motion Attacking Sentence Under Section § 2255*; Rule 1(b), *Rules Governing § 2254 Cases in the U.S. Dist. Cts.* (§ 2254 Rules apply to habeas corpus petitions filed under provisions other than § 2254).

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim.  However, the complaint must allege sufficient facts to establish those

elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (emphases added).  "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

## DISCUSSION

### A.    Due Process Claim

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of due process rights due a defendant in a criminal prosecution do not apply to prison disciplinary proceedings.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)).  In prison disciplinary

9

proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns; (4) and a written decision; (5) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (6) an impartial decision-maker. *Wolff*, 418 U.S. at 564-66, 592.

Here, Alward received advanced notice of the hearing, he was provided staff representation and the ability to present evidence at the hearing. While Alward's requested witnesses were not called to testify at his hearing, it is undisputed that none of the requested witnesses had personal knowledge of the incident which gave rise to the disciplinary proceedings. Two of Alward's witnesses were interviewed by his staff representative; they advised they did not know anything about the incident or Alward's issues with staff. Two other witnesses provided written statements that they, too, did not have knowledge of the incident or Alward's issues with staff, beyond Alward's claim that he believed he would be retaliated against. The DHO's written decision was based on evidence presented at the hearing, which included the incident report, Alward's statement, and the memorandum written by the reporting officer. As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *Baxter*, 425 U.S. at 322, n.5.

Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact.

*Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *Hill*, 472 U.S. at 456; *Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990); *Tyler v. Hooks*, 945 F.3d at 171-72. As long as there is some competent evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

Here, the DHO provided a detailed explanation of why Alward's proffered witnesses were not called. The DHO also detailed what evidence he relied upon in making his finding and noted that Alward had failed to present any evidence beyond his own statement to refute the officer's statement. The DHO did not credit Alward's assertion that the events did not occur as reported and were in retaliation for his having filed grievances. The hearing officer, having observed and received the evidence and testimony, and having had the opportunity to evaluate witnesses first-hand, is well-positioned (and certainly better-positioned than this court) to make determinations regarding weight and credibility witness testimony and other evidence.

"'Adjudicators are entitled to a presumption of honesty and integrity [ ], and thus the constitutional standard for impermissible bias is high [ ].'" *Nicholson v. Carter*, DLB-23-380, 2024 WL 895120 at *6 (D. Md. Feb. 29, 2024) (citations omitted). When a petitioner disputes a DHO's decision to give the officer's written account of the incident greater weight than the petitioner's account (or other evidence in support of the petitioner), the petitioner must show "a level of bias that made fair judgment impossible." "There must be some substantial countervailing reason to conclude that a decisionmaker is actually biased." *Id*. Alward presents no such information. Instead, Alward alleges without support that his hearing was unfair and violated his rights to due process. But the reporting officer did not conduct the hearing, make the decision to find Alward guilty, or write the hearing report. In the same way, the DHO did not prepare the incident report

11

and was not a party to or otherwise involved in the incident.  Rather the DHO simply conducted the hearing, weighed the evidence, and concluded that Alward committed a prohibited act.  There is simply no competent evidence on which it could be reasonably concluded that the DHO was partial or improperly influenced by the reporting officer.

Finally, turning to the "some evidence" standard, the record provides ample evidence to support the DHO's conclusion that Alward violated prison rules.  The "some evidence" standard is "an exceedingly lenient standard, requiring only a modicum of evidence."  *Tyler v. Hooks*, 945 F.3d 159, 170 (4th Cir. 2019) (quotations and citation omitted).  In determining whether that standard was satisfied, a court is not required to examine the entire record, make an independent assessment of witnesses, or re-weigh the evidence.  *Hill*, 472 U.S. at 455.  If the decision of the DHO has "some basis in fact," it is "sufficient to meet the requirements imposed by the Due Process Clause."  *Id*. at 456.

Here, there is some basis in fact for the DHO's decision.  The DHO was presented with the written incident report, the reporting officer's memorandum regarding events, Alward's statement, and the statements of purported witnesses who disclaimed knowledge of the events. The DHO weighed the evidence and gave greater weight to the officer's written testimony. The DHO found that Alward committed the prohibited act of threatening staff. Based on this record, the DHO's determination was grounded in "some evidence" and met the due process requirements. Accordingly, the motion for summary judgment is granted.

**B.    Remaining Claims in Petition**

Alward's claims regarding retaliation and the request for reinstatement of his security classification and telephone and commissary privileges are not cognizable in this case.  A § 2241 petition attacks the manner in which a sentence is executed.  *See* 28 U.S.C. § 2241(a), *see also*

*Jones v. Hendrix*, 599 U.S. 465, 475 (2023) (§ 2241 relief is available when prisoner "might wish to argue that he is being detained in a place or manner not authorized by the sentence . . . ."). Respondent maintains that Alward has chosen the wrong vehicle in which to raise claims regarding retaliation and restoration of his security classification and privileges. Whether a habeas petitioner may raise claims regarding the conditions of his confinement is a matter that has been left unsettled.

The Supreme Court left open the question whether matters concerning "large-scale policy decisions concerning the conditions of confinement imposed on hundreds of prisoners" may be addressed via a petition for writ of habeas corpus. *Ziglar v. Abassi*, 582 U.S. 120, 144-45 (2017) (differentiating claims of "individual instances of discrimination . . . which due to their very nature are difficult to address except by way of damages actions after the fact."); *see also Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) ("When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal.").

The Fourth Circuit has held in unpublished decisions that claims challenging conditions of confinement cannot be brought in habeas petitions. *See, e.g., Wilborn v. Mansukhani*, 795 F. App'x 157, 164 (4th Cir. 2019) (per curiam) (finding "[t]his case presents no basis to deviate from our previous holdings" and concluding that inmate's claim to have the BOP reconsider where he was housed is not one that would fall within the scope of habeas); *see also Rodriguez v. Ratledge*, 715 F. App'x 261, 266 (4th Cir. 2017) (per curiam) (holding that an inmate's challenge to his transfer to a maximum-security facility was "not a cognizable § 2241 claim, because th[e] petition challenge[d] the conditions of his confinement, not its fact or duration").

Additionally, this district court and others have held that conditions of confinement claims regarding email, mail, telephone use, and other privileges are not cognizable under § 2241. *See Head v. Beard*, DLB-22-189, 2023 WL 2023217 at *3 (D. Md. Feb. 15, 2023) (loss of email privileges is not cognizable under § 2241; collecting cases); *Bostick v. Weber*, DKC-21-2507, 2022 WL 622231 at *2–3 (D. Md. Mar. 2, 2022) (holding conditions of confinement and retaliation claims should be raised in separate civil rights action); *Jones v. Smith*, 993 F.2d 1537, 1537 (D. Md. May 28, 1993) (same); *Manuel v. Stewart*, DKC-13-2043, 2014 WL 4094788, n. 2 (D. Md. Aug. 18, 2014) (allegation of staff tampering with inmate's outgoing mail in violation of the First Amendment was a challenge to a condition of confinement); *White v. Leu*, 2023 WL 1783770 at *4 (E.D. Va. Feb. 6, 2023) (inmate claims regarding 30 days of disciplinary segregation, six months loss of commissary privileges, or two months loss of phone privileges are not cognizable under § 2241). Unlike the broad-reaching policy decisions that affect hundreds of prisoners, which the Supreme Court has indicated may be examined under habeas law, the actions complained of in this case are specific to Alward and impact only him. Accordingly, Alward's claims regarding retaliation and restoration of his security classification and privileges are dismissed without prejudice.

## C.     Preliminary Injunction

Alward's request for injunctive relief must also be denied. "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010), *see also SAS Institute, Inc. v. World Programming Lmtd*, 874 F.3d 370, 385 (4th Cir. 2017) (satisfying four-prong test is "a high bar, as it should be."). A party seeking a preliminary injunction or temporary restraining order[3] must demonstrate: (1) by

---

[3] A preliminary injunction is distinguished from a temporary restraining order only by the difference in notice to the nonmoving party and by the duration of the injunction. *U.S. Dep't of Labor v. Wolf Run Mining Co.,* 452 F.3d 275,

a "clear showing" that he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20-23 (2008); *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 292-93 (4th Cir. 2011). "All four requirements must be satisfied." *Cantley v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, 771 F.3d 201, 207 (4th Cir. 2014) (brackets omitted); *see also Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013) (noting that Fourth Circuit's prior test of balancing the factors is no longer good law in light of *Winter*). Alward's request for injunctive relief shall be denied, as he does not clearly satisfy all four factors.

As the Court has previously advised Alward, a fundamental problem with his request for relief is that it does not have any relation to the underlying complaint concerning Alward's disciplinary proceedings. Thus, the requirement of making a clear showing of likely success on the merits actually concerns whether Alward is likely to succeed at trial on his claims that he was denied due process during his disciplinary proceeding. For the reasons already stated, Alward cannot make such a showing.

Moreover, in the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). While such circumstances are not present here, the Court is nevertheless concerned about Alward's claim that he is at a risk of harm from other inmates and has experienced escalating threats of violence. If Alward believes his safety is at risk, he may pursue relief through a civil action detailing those allegations, which he appears

---

281 n.1 (4th Cir. 2006) (comparing FED. R. CIV. P. 65(a) with FED. R. CIV. P. 65(b)). A preliminary injunction cannot issue without notice to the nonmovant. *See* FED. R. CIV. P. 65(a)(1).

already to have done in *Alward v. FCI-Cumberland*, Civil Action No. DLB-25-373 (D. Md.), a case pending before this Court and in which Alward has also moved for injunctive relief. More immediately, as Alward is apparently already aware, he may also seek protective custody at his place of confinement – a solution, he advises the Court, he declines to pursue.

**CONCLUSION**

Having found no basis for federal habeas corpus relief, the petition shall be denied. A separate order follows.

/S/

March 21, 2025

_____
Julie R. Rubin
United States District Judge